## Case No. 551.

### In re ARNOLD.

[2 N. B. R. (1868,) 160, (Quarto, 61.)]

District Court, D. California.

BANKRUPTCY—DEBTS PROVABLE—PREFERENCES.

[1. H. was indorser for A. on a note in bank, and also held two notes executed to him by A. A. was insolvent, and H., apprehending protest of the note in bank, advanced to A. $500 to be applied thereto, and received from A. a bill of sale of a lot of flour, worth about $1,400, in course of shipment to a distant market. *Held* that, though the transaction may have been a preference in favor of H. as to the note in bank then due, yet, there being nothing to show that the flour was to be held as a security for the other notes not due, no preference was created as to them, and H. was not debarred from proving them against the estate of A. in bankruptcy.]

[Cited in Martin v. Toof, Case No. 9,167.]

[2. Cited in Singer v. Sloan, Case No. 12,899, as a case in which a distinction between "knowledge" and "reasonable cause to believe" has been recognized.]

[In bankruptcy. Certificate by register to district judge of question arising upon exception by a creditor to the rejection of his proof of debt. Proof of debt allowed.]

By the Register: At the first meeting of creditors in this case, on the 24th day of January, 1868, I. H. Ham offered in proof of a debt against the bankrupt, the annexed affidavits with the notes attached. to which the Russell & Erwin Manufacturing Co. filed the objection hereto attached, and thereupon the proof of the debt was postponed to a future day. Upon the application of Henry C. Hyde, who was appointed the assignee of the bankrupt estate, the testimony hereto attached has been taken before me in relation to the claim of the said I. H. Ham, and upon the submission of the same, and of the argument of the counsel of the claimant and the Russell & Erwin Manufacturing Co., the following question is to be determined: Has I. H. Ham "accepted any preference, having reasonable cause to believe the same was made or given by the bankrupt, contrary to any provision of the bankrupt act," and thereby made himself subject to the twenty-third section thereof, which further provides that if he has accepted such a preference "he shall not prove the debt or claim, on account of which the preference was made or given; nor shall he receive any dividend therefrom until he shall first have surrendered to the assignee all of the property, money, benefit or advantage received by him under such preference?"

Before entering upon a discussion of the facts involved in the case, I propose first to dispose of the legal questions presented by the counsel for the claimants. Section thirty-five of the bankrupt act provides that "if any person being insolvent or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any * * *

sale * * * of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such * * * sale * * * is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, * * * the sale * * * shall be void and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale * * * is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud." Section thirty-nine of the bankrupt law provides, any person "who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any * * * sale * * * or transfer of money, or other property * * * with intent to give a preference * * * to any person * * * who are, or may be liable for him as endorser * * * shall be deemed to have committed an act of bankruptcy * * * and if such person shall be adjudged a bankrupt * * * the person receiving such * * * conveyance had reasonable cause to believe that * * * the debtor was insolvent * * * such creditor shall not be allowed to prove his debt in bankruptcy."

Now, upon the several sections, the counsel for creditor claims that the transaction which is alleged to have resulted in giving to his client a preference, was a sale of the property of the bankrupt for five hundred dollars, cash paid, and that it was not made in contemplation of bankruptcy by either party, and cannot be held to be void, or as affecting his right to prove his debt. The provisions of the bankrupt law of 1867, applicable to this case, are entirely different from those of the law of 1841, and the decisions to which my attention has been directed are all based upon the law of 1841. By reference to the several sections (of which I have quoted so much as is applicable to this case,) it will be observed that any sale made by a person "insolvent or in contemplation of insolvency or bankruptcy," to another having "reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency * * * shall be void," and that "the person receiving such * * * conveyance had reasonable cause to believe that a fraud on this act was intended, or that the debtor was insolvent * * * shall not be allowed to prove his debt in bankruptcy." It matters not whether either party contemplated proceeding in the bankrupt court; if the fact existed that the debtor was insolvent, and that the creditor had reasonable cause to believe him insolvent, he could not deal with him in any way by which a preference would result to his benefit.

The theory of bankrupt law is, that an insolvent debtor is to husband the estate in his hands as a trustee for his creditors, and that neither the debtor nor creditor shall be a party to any transaction which shall result in giving to one creditor an advantage over another creditor, when he has reasonable cause to believe the debtor is insolvent, and the language of this act could not be more explicit than it is, in declaring this just and equitable principle. That Arnold, the bankrupt, was insolvent on the 18th day of November, 1867, is conceded. On that day it is claimed that Ham, the creditor, purchased of him his interest in two lots of flour afloat on the way to New York, for five hundred dollars cash, without reasonable cause to believe he was insolvent or contemplated bankruptcy, and that that transaction does not preclude him from proving his debt.

Having already determined that insolvency, as well as contemplation of bankruptcy, would vitiate certain sales, it only remains for me to determine whether—

First. Ham had reasonable cause to believe Arnold insolvent.

Second. If he had, whether the sale resulted in giving him an advantage over other creditors, and was made for that purpose.

I. Without especially referring to all the testimony upon which my opinion is based, I am satisfied that Ham, at the time the transaction transpired, which is claimed to be a sale to him of the interest in the flour, had reasonable cause to believe Arnold was insolvent. The peculiar circumstances under which the sale was made were such as were calculated to excite suspicion of Arnold's inability to pay his debts. Had Ham believed him solvent he would not have questioned him as to the amount he could raise to meet his note, and have fixed the amount he would give for his interest in the flour by his ability to pay more or less. Nor would he have made it a condition of the purchase that the five hundred dollars cash he paid him should be applied on Arnold's note in bank endorsed by him. The transaction was not such an one as usually transpires "in the usual and ordinary course of business," and, in the language of the bankrupt law, affords "prima facie evidence of fraud" being committed by the bankrupt against the rights and interests of his other creditors. When Ham testified, "I had to make the trade, because I had to pay the money or let the note go to protest," he confessed that he had good cause to believe Arnold could not meet his liabilities, and that if he did not make the purchase and furnish him with five hundred dollars, he would be liable to have his property attached before night and have his business broken up, and such being the fact, he proposed to him to give him a bill of sale for the amount necessary to pay his note, save him from the immediately impending liability to be attached, and that he would aid him on those terms only. The additional fact that appears from the testimony, that when Ham made the negotiation for the re-purchase of the flour

for five hundred dollars, it was worth, had it been in the city of San Francisco, over and above the advances, eight hundred dollars, and that, taking into account the prospective profit to be realized from it above the advances made upon it, in New York city, upon its arrival there, as appears by the prices current affixed to the testimony, it was worth, say, one thousand four hundred dollars, is an additional circumstance to prove that the transaction was made with a view to give to Ham an advantage not to be enjoyed by the other creditors. All of the circumstances, it seems to me, are such as would have induced any prudent man to believe Arnold was insolvent, and I cannot doubt that the cash was paid and the bill of sale given and received by Ham, believing Arnold to be insolvent.

II. Having determined that Ham had good reason to believe Arnold insolvent when he purchased the flour, did the purchase result in a preference of Ham's debt, and was the sale for that purpose, is now to be discussed and settled. The transaction was a singular one, and it is somewhat difficult to determine precisely whether it was a sale for five hundred dollars cash, or an arrangement that if Ham would advance five hundred dollars to Arnold, to be used for his own benefit in taking up a note on which he was an endorser, upon condition that he would give him a bill of sale of property, worth more than that sum in the market, out of which he was to be partially secured for Arnold's liability on the three notes that were then outstanding against him—one in the bank, on which Ham was endorser, and the other in Ham's hands as the original payee. If it was a purchase for five hundred dollars cash, the application of the money to pay the note in bank, which was made a condition of the advance, the payment of this note was giving a preference to the holder, and made with Ham's knowledge and for his benefit as endorser, and was a fraud upon the thirty-ninth section of the bankrupt act, and would preclude Ham from proving his debt. If it was an arrangement by which Ham was to furnish the larger portion of the money to pay a note on which he was an endorser; upon condition that he was to be secured by the bills of sale for Arnold's liabilities on three notes, there can be no question it was giving a preference that cannot be sanctioned under the bankrupt law, and is null and void; and that as a penalty for Ham's being a party to it, he cannot be allowed to prove his debt in bankruptcy. It matters not, therefore, whether the theory presented by the claimant's counsel be adopted, that it was a sale for five hundred dollars cash, or the theory presented by the party opposing the proof of the claim, that the transaction was an advance of five hundred dollars, to be applied to the payment of an outstanding note, upon which he was an endorser, upon

the condition that Ham should become the nominal owner of the flour, with the understanding that the proceeds realized from it was to be applied in liquidation of the notes now offered to be proved. Adopting either alternative, the register is forced to the conclusion that it was the intention of Arnold to give a preference to Ham, and that Ham received the bill of sale with reasonable cause to believe Arnold was insolvent, and must take the consequences. The question is not now before me, whether the transaction subjects Ham to an action to be commenced by the assignee of the bankrupt to recover the value of the property transferred, as assets of the bankrupt, but if my conclusions of law and fact are right, such a result must follow and it will be the duty of the asignee to take action in the matter. It will also, in its results, preclude the bankrupt from obtaining his discharge, though that question is not now under discussion. The results that must follow from this decision, if sustained by Judge HOFFMAN, who will probably be required to review it, may be regarded as a hardship upon both debtor and the creditor offering his claim for proof, as they were not probably anticipated at the time of the transaction, upon which I have commented, as the bankrupt law is not generally understood by the mercantile community, as I have reason to believe, by proceedings almost daily taken before me; yet they are just and right. The bankrupt law is intended to afford a rule of action for the debtor and creditor that will secure a proportionate distribution of the assets of an insolvent person among all of his creditors, and prevent one creditor profiting at the cost of another, and imposes upon the debtors and creditors all alike, a penalty for the violation of its just principles.　　Asher B. Bates, Register.

Upon announcing the foregoing decision, the creditor offering his debt for proof excepted to the same, and prayed the register to certify the question discussed to the Hon. OGDEN HOFFMAN, district judge of the district court, together with the testimony and the opinion of the register, that the same may be reviewed by him.

Pursuant to the provisions of the bankrupt act, the undersigned, as register of the first congressional district, upon the prayer of the said I. H. Ham, hereby certifies to the said Hon. OGDEN HOFFMAN, the papers hereto attached, for his decision thereupon, and as the question presented has not been adjudicated upon in this district, respectfully asks that counsel for the debtor and the contestant may be heard upon the question presented, at such time and place as may be fixed by the district judge.

San Francisco, 23d day of July, 1873.

Asher B. Bates, Register.

HOFFMAN, District Judge. This was a question certified to the court by A. B. Bates,

Esq., register, pursuant to section four of the bankrupt act. I am disposed to entirely assent to the general views of the register as to the intent and construction of the various sections of the act referred to by him. I also de·line [incline][1] to take the same view of the facts of this case as presented by him in his opinion. But it has appeared to me that these questions do not properly arise in the present case. If a preference was given by the bankrupt and received by the creditor, who had reasonable cause to believe that the debtor was insolvent, or acting in contemplation of insolvency, such preference was given only in respect of the note then due. The money paid for the flour was applied to the payment of that note, and it was not alleged on the argument that the proofs showed any understanding or agreement that the flour was to be held as security for the other notes not due, or that its proceeds were in any to be applied to the payment of those notes, or in any way credited to the debtor. The sale of flour was absolute on its face, and, so far as appears, transferred the whole property in it to the purchaser, with no obligation on his part to account for the proceeds or to pass them to the credit of the seller on account of the other notes given by the latter. If this be so, the preference was given only in respect of the note then due, and I think it clear that the provisions of the thirty-ninth section, which deprives the creditor who receives a preference of the right to prove his debt, only refers to the debt sought to be preferred and not to other debts, and especially those not then due, in respect of which no preference was attempted to be given. I therefore think that in this case the creditor should be allowed to prove the debts evidenced by the two notes not due at the time the flour was sold to him.

[2. An objection that the officer before whom a deposition by a joint inventor in opposition to an application for a patent was taken failed

---

[1][Printed "decline" in 2 N. B. R. 167, octavo edition, but in the quarto it is given as "incline."]

